IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| LEGACY COMMUNITY HEALTH SERVICES, INC., *Plaintiff,* | § § § § | |
| v. | § | Civil Action No. 4:15-CV-00025 |
| DR. KYLE JANEK, In His Official Capacity as Executive Commissioner of the Texas Health and Human Services Commission, *Defendant.* | § § § § § § § | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE KEITH P. ELLISON:**

NOW INTO COURT, through undersigned counsel, comes Defendant Chris Traylor, in his official capacity as Executive Commissioner of the Texas Health and Human Services Commission ("Defendant" or "HHSC"), and hereby files this his Reply in Support of Defendant's Motion for Summary Judgment ("Plaintiff" or "Legacy"), and in support hereof, respectfully shows the Court the following:

### I. Deference to CMS's approvals is appropriate in this case.

Legacy claims that the Medicaid Act prevents HHSC from requiring Managed Care Organizations ("MCO") to fully, timely reimburse Federally-qualified Health Centers ("FQHC"), like Legacy, at 100% of their Prospective Payment System rate ("PPS rate") because so doing *may* create a disincentive to contract with FQHCs, like Legacy, that use aggressive business tactics that rapidly drive up their costs. Accordingly, Legacy wants to force Texas to make a supplemental payment where

1

there is no delta between what Legacy is paid by an MCO and Legacy's PPS rate. Put simply, Legacy wants this Court to order that Legacy must receive two partial checks for services it provides—one from Texas and one from a MCO—rather than receiving a single check from a MCO.

As an initial matter, Medicaid Act provision 42 U.S.C. § 1396a(bb)(5) does not on its face prevent a state from requiring a MCO to pay full, timely PPS rate reimbursements to FQHCs. CMS approved that arrangement when it approved HHSC's State Medicaid plan, State Plan Amendments, MCO contract, and actuarial rates. The language of § 1396a(bb)(5)(A) is ambiguous as to the issue before the Court in this case. Legacy implicitly concedes that point when it repeatedly returns to arguing that a single guidance letter interpreting the statute should be dispositive in this matter.[1] If the statute were clear on its face, Legacy would not have to rely so heavily upon a lone guidance letter.[2]

Legacy further ignores that CMS has made clear that states may set minimum payment amounts MCOs must pay to their providers. *See* ECF No. 89 at p. 51. ("The

---

[1] Interestingly, Legacy argues that a 2010 state plan amendment approval should not control because it was approved a year before the legislative enactment that relied on the state plan amendment. *See* ECF No. 94 at p. 10. In the same response, Legacy argues that 1998 guidance should control when interpreting a statute that was amended two years after the issuance of the 1998 guidance. *See* ECF No. 89 at pp. 7-8.

[2] The guidance relied upon by Legacy in this case clearly did not apply to prevent a payment methodology enacted following the passage of BIPA in 2000 because the letter preceded BIPA. Even if Legacy is correct as how to read the guidance—and HHSC asserts that it is not—Legacy's claim should still fail. Legacy's asserted right to a particular payment method, as opposed to amount, arises not from an express or implied right contained in BIPA, but rather from the lone guidance letter. Implied rights of action emerge from Congress, not regulatory guidance. See *Detgen ex rel. Detgen v. Janek*, 752 F.3d 627, 629-30 (5th Cir. 2014) (Private rights of action to enforce federal law must be created by Congress.). Accordingly, Legacy's lawsuit advances a right that is not contained within the statute it relies upon in this case for relief. Legacy's heavy reliance on a lone guidance letter issued prior to the 2000 BIPA indicates that Legacy understands that their claim is reliant solely upon a dead letter from CMS, not the Medicaid Act itself.

[HHS Secretary] maintains that a state administering a managed care system is not prohibited by the federal statutes, regulations, and operating procedures governing the Medicaid program from establishing minimum payment rates for specific services in MCO contracts, but CMS *does not require the states do so or otherwise regulate subcontractual payment arrangements* between MCOs and their contracted providers.") (emphasis added). In fact, Legacy concedes that the Texas State Medicaid plan, relevant State Plan Amendments, model MCO contract, and actuarial rates have received the CMS seal of approval.

In an effort to avoid the conclusion that such approvals are entitled to *Chevron* deference, Legacy argues that HHSC is not entitled to rely upon a state plan amendment that plainly permits the payment methodology HHSC has enacted because the payment method became effective a year after the SPA approval. The approval of the SPA is an approval of all payments methods that may be enacted under it, including Texas's current payment methodology.[3] Accordingly, *Texas v. U.S. Dept't of Health and Human Servs.*, 61 F.3d 438 (5th Cir. 1995), controls in this case and entitles HHSC to rely upon the CMS approvals of its State Medicaid plan, State Plan Amendments, MCO contracts, and actuarial rates in setting its payment system.[4]

---

[3] It is worth noting here that Legacy never contends that HHSC is incorrect in asserting that its SPA is entitled to *Chevron* deference as a matter of law. Rather, Legacy argues that the SPA preceded the *enactment* of the payment methodology, while not commenting on whether the CMS-approved SPA would permit the payment methodology HHSC has enacted. The changes in the 2000 BIPA and the CMS-approved SPA do not appear to prohibit a state from requiring MCOs to compensate FQHCs at 100 percent of their PPS rate. *See* ECF No. 89 at p. 8 (Discussing the history of the BBA, BIPA, and the SMDLs at issue in this litigation).

[4] Even if the SPA approval were not entitled to *Chevron* deference, the approval of HHSC's MCO contract is. As discussed at length in HHSC's Motion for Summary Judgment, MCO contracts undergo

## II. HHSC did not unlawfully delegate its obligation under the Medicaid Act.

HHSC required the Texas Children's; Health Plan ("TCHP") to reimburse Legacy 100 percent of its PPS rate. Legacy does not dispute that it received 100 percent of its PPS rate from TCHP while Legacy contracted with TCHP. Legacy does not allege that it failed to receive its PPS for any service provided to a TCHP enrollee. Legacy lost its contract in February 2015, and no longer contracts with TCHP because of its aggressive business tactics. Legacy claims that it really lost its contract with TCHP because HHSC did not make supplemental payments ("wrap payment"). HHSC contends that the law requires Legacy to receive 100 percent of its PPS, not that it receive payments from multiple sources. Legacy contends that the law requires HHSC to guarantee Legacy receives 100 percent of its PPS and that at least some portion of that 100 percent must come in the form of a payment from the state, even where—as here—Legacy otherwise received 100 percent of its PPS for services rendered. Is it an unlawful delegation to require TCHP to pay Legacy in full and on time?

The Medicaid Act explicitly provides that a State Medicaid plan "shall provide for payment of a supplemental payment equal to the amount (*if any*)" of the difference between the payment from an MCO and the PPS rate.[5] 42 U.S.C.A. § 1396a(bb)(5)(A).

---

a review process under authority delegated to CMS by Congress. *See* ECF No. 89 at pp. 34-39. At a minimum, the review and approval of MCO contracts and actuarial documents underpinning HHSC's policy should receive *Skidmore* deference that in this case would support the contention that CMS has effectively repudiated its 1998 SMDL. Such approvals at a minimum imply that CMS has backed away from its reliance on pre-PPS rate SMDL guidance, freeing this Court to look past Plaintiff's reliance on it.

[5] The Texas State Medicaid plan contains such a provision. Texas State Plan under XIX of the Social Security Act Medical Assistance Program, at Attachment 4.19-B, p. 24g (available at

In this case, that means the Texas State plan would have to provide a supplemental payment equal to the difference between what TCHP paid Legacy and Legacy's PPS rate. The plain language of the Medicaid Act clearly contemplates payment in full by an MCO of the PPS. Otherwise, the "*if any*" language would be superfluous because there would *always* be a supplemental payment. Under the MCO contract used by TCHP and Legacy, that difference was zero. CMS approved that result when it approved the HHSC MCO contract.[6] Since the difference was zero, there was nothing to supplement. Legacy's nonsensical argument is that HHSC violated federal law by delegating responsibility to supplement payments made on time and in full.

Now wait just a minute, Legacy says. HHSC's payment requirement creates a disincentive to contract with FQHCs generally. Requiring the Texas Children's Health Plan to pay Legacy in full and on time made Legacy a less attractive provider to TCHP. That position is undercut by significant evidence to the contrary. For example, TCHP currently has seventeen other FQHCs in its provider network. TCHP terminated only Legacy's contract.[7] Legacy's aggressive business tactics resulted in its contract termination, not HHSC's CMS-approved payment requirement.[8] Clearly,

---

http://www.hhsc.state.tx.us/methcaidlaboutfstate-planldocsfbasic-state-plan-attachments.pdf, at p. 893 of PDF document) ("In the event that the total amount paid to an FQHC by a managed care organization is less than the amount the FQHC would receive under PPS or APPS, whichever is applicable, the state will reimburse the difference on a state quarterly basis.)

[6] "The MCO must pay the full encounter rates to FQHCs…for Medically Necessary Covered Services…using the prospective payment methodology…Because the MCO is responsible for the full payment amount…cost settlements (or "wrap payments") will not apply." *See* ECF No. 90-1 at APPX-00282.

[7] ECF No. 89 at p. 12 ("'Texas Children's terminated its contract with Legacy because Legacy's practice of acquiring existing practices arbitrarily and artificially inflated the average cost of services…Texas Children's has not terminated contracts with any of the remaining *seventeen* FQHCs in its network.'").

[8] ECF No. 89 at pp. 11-14 (Discussing the numerous aggressive business tactics employed by Legacy).

CMS's approval of payments in full and on time has not created the harm that Legacy claims in this case.

Does HHSC unlawfully delegate the payment of a supplement to MCOs where an FQHC already receives their full payment? No. HHSC's policy does not require a delegation or violate any provision of the Medicaid Act because no provision of the Medicaid Act precludes Texas from requiring an MCO to pay Legacy its full, timely PPS rate, a result in accordance with the CMS approval. Legacy has never contended that they failed to receive their full, timely reimbursement. In point of fact, full, timely reimbursement is precisely what Legacy received during the term of its provider agreement with TCHP, evidence in itself that HHSC's payment structure works.

### III. Legacy bears the burden of proving that HHSC has not implemented 42 U.S.C. § 1396b(m)(2)(A)(vii) in this case. HHSC is not required to disprove Legacy's claims.

Legacy claims it has not been paid for "out-of-network" 42 U.S.C. § 1396b(m)(2)(A)(vii) claims ("medically necessary claim").[9] Legacy argues HHSC is to blame for non-payment because HHSC has not implemented rules for medically necessary claims.[10] HHSC has implemented rules for medically necessary claims.[11] CMS approved HHSC's MCO contract provisions implementing rules for medically

---

[9] A 42 U.S.C. § 1396b(m)(2)(A)(vii) claim arises when "***medically necessary services***…were provided…to an individual enrolled with [an MCO]… other than through the organization ***because the services were immediately required due to an unforeseen illness, injury, or condition…***"
[10] ECF No. 94 at p. 6.
[11] Jesse. Dep. 97:20-23 ("Q: So the state has implemented [42 U.S.C. § 1396b(m)(2)(A)(vii)] through its emergency services provisions of its MCO contracts; is that right? A: Yes. And the [Texas Administrative Code]."); *see also*, Def. Supplemental Response to Pl.'s First Request for Interrogatories.

6

necessary claim.[12] That is all the Medicaid Act requires HHSC to do. The decision by CMS to approve the MCO contract that implements the HHSC rules for medically necessary claims is entitled to deference from this Court. That notwithstanding, Legacy did not provide any summary judgment evidence showing that it has submitted a single medically necessary claim. Why, then, is Legacy claiming that HHSC did not implement rules for medically necessary claims?

Legacy contends that it does not know whether "immediately required," one term in the definition of a medically necessary claim, is the same as "emergency."[13] Why would Legacy take such a position? The answer is that Legacy wants to avoid prior authorization requirements for treating out-of-network TCHP enrollees. Legacy claims that all illness is unforeseen, and when treatment is sought for an "unforeseen illness or injury," that treatment is "immediately required." Therefore, says Legacy, it is a medically necessary claim.[14] By claiming that every treatment of an illness constitutes a medically necessary claim, Legacy is attempting to avoid any limitations on its ability to grow its customer base, and fees, following the termination of the TCHP contract.[15]

The foregoing is precisely the reason why it important that Legacy failed to produce any evidence regarding the alleged medically necessary claims Legacy has said have not been paid. Legacy's Vice President of Clinical Business Services testified that she had no basis for determining whether the claims she swore to in her

---

[12] ECF No. 89 at pp. 15-16.
[13] ECF No. 89 at p. 13.
[14] *See id.* at pp. 14-16.
[15] *See id.* at pp. 14-15.

affidavit were medically necessary claims. Meaning, Legacy cannot establish what kind of claim they made, and it would therefore fall on this Court to act as arbiter of whether Legacy has *any* proper claims.[16]

It is also the reason why whether Legacy provides services pursuant to an MCO contract, as opposed to out-of-network, matters in this case. Without a provider contract, the requirements, such as prior authorization, play a role in the delivery of care. Here, Legacy attempts to mash all claims—both with a contract and without—into a single ball and call them claims under 42 U.S.C.A. § 1396a(bb)(5). Legacy is taking an aggressive legal and business position in the hopes of convincing this Court that Legacy is somehow being denied payment for providing medically necessary services because HHSC failed to provide rules in its MCO contract concerning medically necessary claims.[17] Legacy cannot avoid the fact that HHSC has implemented rules covering medically necessary claims, CMS has approved those rules,[18] and that those approvals from CMS are entitled to deference from this Court.

## IV. Conclusion

Plaintiff's cause of action should be dismissed and its Motion for Summary Judgment Denied; additionally, this Court should grant Defendant's Motion for Summary Judgment.

Dated: January 12, 2016.

---

[16] This is why abstention is appropriate in this case, in the event the Court did not agree that *Chevron* deference resolves this case. HHSC has an entire administrative process in place to determine the validity of claims. *See generally*, 1 Tex. Admin. Code § 353.4.
[17] ECF No. 89 at pp. 14-16.
[18] *See id*.

8

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Division Chief
General Litigation Division

/s/ Eric A. Hudson
ERIC A. HUDSON
Assistant Attorney General
Texas State Bar No. 24059977
S.D. Texas Admission No. 1000759
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 936-6417
Facsimile: (512) 478-4013
eric.hudson@texasattorneygeneral.gov
*Counsel for Dr. Kyle Janek, In His Official Capacity as Executive Commissioner of the Texas Health and Human Services Commission*

## CERTIFICATE OF SERVICE

I certify that on January 12, 2016, a copy of this Reply in Support of Defendant's Motion for Summary Judgment was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorneys in charge for plaintiff:

Michael J. Collins
COLLINS, EDMONDS, POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3490
Facsimile: (832) 415-2535
E-mail: mcollins@cepiplaw.com

Edward T. Waters
Gregory M. Cumming
FELDESMAN, TUCKER, LEIFER, FIDELL, LLLP
1129 20th Street, N.W. Fourth Floor
Washington, D.C. 20036
Telephone: (202) 466-8690
Facsimile: (202) 293-8103
E-mail: ewaters@ftlf.com
E-mail: gcumming@ftlf.com

/s/*Eric A. Hudson*
ERIC A. HUDSON
Assistant Attorney General