**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| LEGACY COMMUNITY<br>HEALTH SERVICES, INC.,<br><br>     Plaintiff,<br><br>     v.<br><br>DR. KYLE L. JANEK, in his Official Capacity as<br>Executive Commissioner of the Texas Health and<br>Human Services Commission,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.: 4:15-CV-00025<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

In its March 4, 2016 Order, the Court directed Plaintiff Legacy Community Health

Services, Inc. ("Legacy") to submit a brief regarding "how the recent CMS approval bears on the

issue of *Chevron* deference or how it affects any other issue raised in the summary judgment

briefing." ECF No. 98. In short, as to Legacy's claim that Defendant is violating 42 U.S.C. §

1396a(bb) by delegating its federally-qualified health center ("FQHC") payment obligation to

Medicaid managed care organizations ("MCO"), the State Plan Amendment ("SPA") approval is

not only arbitrary and capricious, but completely contrary to the law it purports to implement,

and as such, has no effect on the relief to which Legacy is entitled.

As to Legacy's claim that Defendant is violating § 1396a(bb) by failing to ensure full

FQHC reimbursement for services "immediately required due to an unforeseen illness, injury, or

condition," 42 U.S.C. § 1396b(m)(2)(A)(vii); *see* ECF Nos. 84-1, at 27-31; 94, at 6-7, the SPA

approval has no bearing. It neither mentions nor purports to address § 1396b(m)(2)(A)(vii) or

this "out-of-network" reimbursement issue. In other words, the issue of whether Defendant's

(hereinafter referred to as "HHSC") payment policies ensure proper reimbursement at Legacy's prospective payment system ("PPS") rate for such services is separate and distinct from whether HHSC's delegation of its payment obligation is lawful.

      A.      **The SPA approval is entitled to no deference because the operative statute has a plain and unambiguous meaning, which prohibits HHSC from doing precisely what it has done here — imposing FQHCs' full PPS payments on MCOs**

          1.      <u>The statutory language and Congress's intent are clear</u>.

As the Supreme Court explained regarding deference to agency action, "[f]irst, always, is the question whether Congress has spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.*

Here, the SPA approval is entitled to no deference because Congress has spoken, through clear and unambiguous language, on the precise question at issue — whether the State may delegate its FQHC payment obligation to Medicaid managed care organizations ("MCO"). The operative statute, 42 U.S.C. § 1396a(bb)(5)(A), plainly states that "the State plan *shall* provide for payment *to the center* or clinic *by the State*" (emphasis added), with payments by an MCO as an offset to the state's obligation. By singling out a specific provider type, FQHCs, in the context of managed care (where a state would otherwise be permitted to fully delegate to MCOs its obligation to reimburse providers), *and* requiring a direct "payment to the center . . . *by the State*" (emphasis added), the "unambiguously expressed intent of Congress," *Chevron*, 467 U.S. at 842, is to prohibit a state from delegating its FQHC payment obligation (as well as the

determination of the amount).[1]  To read this choice of language as doing anything other than prohibiting HHSC's payment policy would not give effect to the words chosen by Congress. *Miss. Poultry Ass'n, Inc. v. Madigan*, 31 F.3d 293, 299 (5th Cir. 1994) ("To give effect to the core democratic principle of congressional primacy, *Chevron* instructs reviewing courts first to use 'traditional tools of statutory construction' to ascertain whether 'Congress has directly spoken to the precise question at issue'").

The plain meaning of 42 U.S.C. § 1396a(bb)(5) as prohibiting a state from delegating its FQHC payment obligation to MCOs is reinforced and amplified by that provision's "conforming amendment," now codified at § 1396b(m)(2)(A)(ix), which expressly prohibits states from imposing any payment obligation on an MCO for FQHC services other than the obligation to pay FQHCs "not less than" the amount the MCO pays other providers for similar services. [2]

---

[1]    The legislative history buttresses this plain meaning, as it shows that the very statute at issue repealed and replaced a provision that had previously allowed states to delegate their FQHC payment obligations to MCOs.  Prior to the Balanced Budget Act ("BBA") of 1997, state Medicaid programs were required to reimburse FQHCs at 100% of their reasonable costs for providing covered services; if the FQHC entered into a contract with an MCO, statutory language provided that the MCO "must pay the FQHC 100% of reasonable costs and the state's capitation payment to the [MCO] must reflect the 100% rate that is due to the FQHC."  H. Rep. 105-217, at 868 (July 30, 1997).  In 1997, Congress repealed that language, and replaced it with two provisions designed to ensure that FQHCs would not be harmed by participating in managed care, and would receive their full cost-based rates.  The first provision maintained a state's reimbursement requirement to FQHCs, but allowed a state to reduce payments to an FQHC to the extent the FQHC received payments from an MCO, while the second provision required states to ensure MCOs paid FQHCs "not less" than they would pay any other provider for the services the FQHCs provided.  *Id.*

[2]    Specifically, the Balanced Budget Act of 1997 ("BBA") inserted the following language: "SEC. 4712. PAYMENT FOR CENTER AND CLINIC SERVICES.

(1) IN GENERAL.—Section 1902(a)(13)(C) (42 U.S.C. 1396a(a)(13)(C)), as so redesignated, is further amended . . .  by inserting . . . "in the case of services furnished by a Federally-qualified health center or a rural health clinic pursuant to a contract between the center and an organization under section 1903(m), for payment to the center or clinic at least quarterly by the State of a

Imposing on MCOs the FQHC payment obligation, which is a prospective cost-based payment that is unique to each FQHC, is plainly different than and inconsistent with a pay "not less than" provision, which is designed to prevent MCOs from having to treat or pay FQHCs differently than other providers. An MCO may, in its own discretion, pay more, but it cannot be forced by the state to do so.[3]

Indeed, CMS has consistently and repeatedly construed § 1396a(bb)(5) and its companion clause as having an unambiguous meaning. For example, in its April 1998 State Medicaid Director Letter ("SMDL"), CMS noted that "the language" in § 1396a(bb)(5) "specifically requires States to make these supplemental payments." ECF No. 84-2. Further, CMS later referred to the FQHC payment provisions as "straightforward and self-implementing." ECF No. 94-2. As recently as 2013, a Rule 30(b)(6) deponent of CMS testified that the April 1998 SMDL "has not been rescinded or superseded." ECF No. 94-3.

---

supplemental payment equal to the amount (if any) by which the amount determined under clause (i) exceeds the amount of the payments provided under such contract"

(2) CONFORMING AMENDMENT TO MANAGED CARE CONTRACT REQUIREMENT.—Clause (ix) of section 1903(m)(2)(A) (42 U.S.C. 1396b(m)(2)(A)) is amended to read as follows: ''(ix) such contract provides, in the case of an entity that has entered into a contract for the provision of services with a Federally-qualified health center or a rural health clinic, that the entity shall provide payment that is not less than the level and amount of payment which the entity would make for the services if the services were furnished by a provider which is not a Federally-qualified health center or a rural health clinic" . . . ."

Pub. L. 105-33, at 258-59 (Aug. 5, 1997).

[3]    Contrary to assertions HHSC has made throughout this litigation, the amendments as part of the Benefits Improvement and Protection Act ("BIPA") of 2000 did nothing to change the operative language in § 1396a(bb)(5) or its companion clause in § 1396b(m)(2)(A)(ix). *See* H. Rep. 106-1-33, at 863, 906 (Dec. 15, 2000) ("[i]n managed care contracts, States *must* make supplemental payments to the center or clinic that would be equal to the difference between the contracted amounts and the cost-based amounts") (emphasis added).

Another undeniable indication that the statute at issue is clear and unambiguous for purposes of a *Chevron* analysis is the fact that it is also confers an enforceable right under 42 U.S.C. § 1983. *See, e.g. Cmty. Health Care Ass'n of New York v. Shah*, 770 F.3d 129, 153 (2d. Cir. 2014); *Cal. Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1013 (9th Cir. 2013); *New Jersey Primary Care Ass'n*, 722 F.3d at 541; *Three Lower Cnties. Cmty. Health Servs., Inc. v. Maryland*, 498 F.3d 294, 298 (4th Cir. 2007); *Rio Grande Cmnty. Health Cntr., Inc. v. Rullan*, 397 F.3d 56, 74 (1st Cir. 2005); *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132 (2d. Cir. 2002). Whether a statute confers enforceable rights involves, among other things, an analysis of whether Congress "intended to confer individual rights upon a class of beneficiaries" through "rights-creating language." *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 603 (5th Cir. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)). Every court to analyze § 1396a(bb)(5) has found that it confers a payment right that is enforceable against states. It would be incongruous then, to say the least, for the same statutory language to, on the one hand, be clear and specific enough to support a federal cause of action, but, on the other hand, sufficiently ambiguous to give rise to *Chevron* deference. In other words, § 1396a(bb)(5)'s prohibition on delegation is intrinsically part of the payment right that section confers. If a state were permitted to delegate its FQHC payment obligation to MCOs, it would essentially be changing the law in such a way as to eliminate an FQHC's right to enforce that provision against the state. Congress does not confer and then abrogate enforceable rights against states in such a haphazard manner.

2. The SPA approval is an unreasoned departure from CMS's longstanding interpretation.

Even if this Court were to find the statutory language ambiguous, deference to the SPA approval by a CMS Regional Office is unwarranted as it is an unexplained departure from CMS's longstanding and cogent interpretation of the statute as prohibiting states from doing

precisely what HHSC has done here — delegating its FQHC payment obligation to MCOs. *Chevron* deference requires than an agency interpretation be a "permissible construction" of the statute. 467 U.S. at 843. In determining what is a "permissible construction" the Supreme Court has incorporated principles of review under the Administrative Procedure Act, which provides that "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983); *see also Rust v. Sullivan*, 500 U.S. 173, 186-87 (1991).

Based on those standards, the SPA approval is a "textbook" violation of administrative law as it provides no explanation, much less a reasoned analysis, for its departure from a longstanding interpretation of the provision at issue. *See Nat'l Cable & Telecomm. Ass'n v. Brand X*, 545 U.S. 967, 981 (2005) (requiring an agency to "explain[] the reasons for a reversal of policy").

As described in Legacy's prior briefings, there is no question that CMS has consistently and repeatedly construed § 1396a(bb)(5) as prohibiting states from delegating their FQHC payment obligations to MCOs. *See* ECF No. 94, at 10-12 (citing ECF Nos. 84-2, 3 (1998 SDMDs); 94-2 (2001 rulemaking); 84-5 (CMS MCO contract checklist); 94-3 (CMS declaration); and 94-4 (2015 CMS MCO contract review guide)). Such interpretations are entitled to particular deference, especially when announced contemporaneously with the statute being interpreted. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987) ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view"). CMS's

interpretation of the BBA language has remained unchanged since 1998, and indeed, its 1998

SMDLs remain published on CMS's website to this day.[4]

It is equally clear that the SPA approval is a complete departure from that longstanding

interpretation. That approval neither acknowledges the departure nor provides an explanation for

it. As such, there is no question here that CMS "entirely failed to consider an important aspect of

the problem." *Motor Vehicle Mfrs.*, 463 U.S. at 43. That alone renders the action arbitrary. *See*

*FCC v. Fox Television Studios, Inc.*, 556 U.S. 502, 515 (2009). The reason unexplained agency

actions are deemed arbitrary and capricious is because they are, by their very nature, unreasoned

and provide nothing for a court to review.[5]

The basis of deference to agency action is that the agency exercises its expertise (*i.e.*, a

"consideration of the relevant factors," *Motor Vehicle Mfrs.*, 463 U.S. at 43). Where, as here,

there is no application of that expertise and articulation of the agency's reasoning, there is

nothing for the court to defer to.

Further, even if the agency had attempted to explain itself, it would be a tall order to go

from construing language in a statute as *prohibiting* an act to then reading that language as

*permitting* it. CMS makes no attempt to confront this issue in its SPA approval. While in theory

an agency "is entitled to change its views on the acceptability of [a prior policy], it is obligated to

---

[4]     *See https://www.medicaid.gov/federal-policy-guidance/federal-policy-guidance.html.*

[5]     Further, it is no wonder the approval fails to acknowledge CMS's longstanding position as a CMS Regional Office has no authority to disregard SMDLs or other such guidance — to allow a Regional Office to do so would be to permit it to circumvent national policy or create inconsistent regional policy, or to effectuate a *de facto* amendment to a statute. *See* 42 C.F.R. § 430.14 (CMS regional staff "consult[] with central office staff on questions regarding application of Federal policy"); § 430.15(b) ("The Regional Administrator exercises delegated authority to approve the State plan and plan amendments *on the basis of policy statements and precedents previously approved by the Administrator*") (emphasis added).

explain its reasons for doing so." *Texas Office of Public Util. Counsel v. F.C.C.*, 265 F.3d 313, 322 (5th Cir. 2001).

Although SPA approvals may be entitled to *Chevron* deference in some circumstances, deference was not intended to give agencies a blank check. *See, e.g. Christ the King Manor, Inc. v. U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 309-12 (3d. Cir. 2013) (finding CMS's approval of a Pennsylvania SPA arbitrary and capricious where CMS relied only on state's assurances rather than "studies or analyses" such that court's approval would have "nullifie[d] HHS's review process" by allowing it to "accept[] a state's assertions at face value"). Giving any weight to this SPA approval would permit an agency official to contravene unambiguous federal law and an agency's longstanding interpretation of it.

## B.    Conclusion

For the reasons described above, the SPA approval has no effect on the relief to which Legacy is entitled, as it is arbitrary, capricious, and contrary to the law.

Respectfully submitted,

LEGACY COMMUNITY HEALTH SERVICES, INC.

By: */s/ Michael J. Collins*
Michael J. Collins – Attorney-in-Charge
Texas Bar No. 04614510
Southern District of Texas I.D. No. 15643
**COLLINS EDMONDS SCHLATHER & TOWER, PLLC**
1616 South Voss Rd., Suite 125
Houston, Texas 77057
Telephone: (713) 501-3425
Facsimile: (832) 415-2535
Email: mcollins@ip.lit.com

Of Counsel:

Edward T. Waters
Gregory M. Cumming
FELDESMAN TUCKER LEIFER FIDELL LLP
1129 20th Street, N.W., Fourth Floor

Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)
ewaters@ftlf.com
gcumming@ftlf.com

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who registered as filing users of the Court's CM/ECF system are being served with this filing per LR5.1.

March 10, 2016                                   */s/ Michael J. Collins*
                                                            Michael J. Collins