IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| LEGACY COMMUNITY HEALTH SERVICES, INC., *Plaintiff*, | § § § § | |
| v. | § | Civil Action No. 4:15-CV-00025 |
| DR. KYLE JANEK, In His Official Capacity as Executive Commissioner of the Texas Health and Human Services Commission, *Defendant*. | § § § § § § § § | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE KEITH P. ELLISON:

On March 4, 2016, this Court ordered additional briefing, ECF No. 98, regarding the effect of Defendant Chris Traylor's ("Defendant" or "HHSC") March 2 Advisory, ECF No. 97, alerting this Court to the substantive change in the Texas State Medicaid Plan ("State Plan") the Centers for Medicare and Medicaid Services ("CMS") approved on February 25, 2016. Pursuant to this Court's Order, HHSC raises three arguments:

(1) This Court's discussion in its ruling denying HHSC's Motion to Dismiss includes an explanation of the divergence between this Court's denial of HHSC's motion and the decision of the United States Court of Appeals for the Fourth Circuit in *Three Lower Counties v. State of Maryland*, 498 F.3d 294 (4th Cir. 2007) on the issue. That divergence compels a finding of ambiguity here, *Comacho v. Texas Workforce Com'n.*, 408 F.3d 229, 234 (5th

1

Cir. 2005), requiring this Court to analyze CMS's administrative approval of SPA 16-02 under the two-step analysis announced in *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984).

(2) CMS approval of State Plan Amendment ("SPA") 16-02 is entitled to *Chevron* deference and is dispositive of the issues in this litigation. *See Texas v. United States Dept. of Health and Human Servs.*, 61 F.3d 438 (5th Cir. 1995).

(3) State Medicaid Director Letters ("SMDL") are policy statements, not rules. Even if SMDLs constitute rules, at best they constitute interpretive rules "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers[.]" *Chrysler Corp. v. Brown*, 441 U.S. 281, n.31 (1979). Accordingly, SMDLs are entitled to minimal deference, if any.

Finally, the Court requested comment concerning the remaining issues in this litigation following CMS's approval of HHSC's payment methodology. The remaining questions arising from Defendant's Motion for Summary Judgment are:

(a) Does Plaintiff have standing to bring a claim pursuant to 42 U.S.C. § 1396b(m)(2)(A)(vii)?

(b) Does 42 U.S.C. § 1396b(m)(2)(A)(vii) provides a private right of action?

(c) Is CMS's approval of HHSC's MCO contract provisions pertaining to the payment of out-of-network services for Federally-qualified health centers entitled to deference from this Court?

## I. Legal standard applicable in review of State Plan Amendments.

The United States Court of Appeals for the Fifth Circuit ruled, in *State of Texas v. U.S. Dept. of Health and Human Servs.*, 61 F.3d 438 (5th Cir. 1995), that decisions by the United States Department of Health and Human Service ("HHS") pertaining to SPAs are entitled to *Chevron* deference. 61 F.3d 438, 442 (5th Cir. 1995). Each circuit court that has addressed the issue also has held that SPAs are entitled to *Chevron* deference. *See, e.g., Community Health Care Ass'n of New York v. Shah*, 770 F.3d 129 (2nd Cir. 2014); *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235 (9th Cir. 2013); *Christ the King Manor, Inc. v. Sec'y of U.S. Dep't. of Health and Human Servs.*, 730 F.3d 291 (3rd Cir. 2013); *Pharmaceutical Research Manufacturers of America v. Thompson*, 362 F.3d 817 (D.C. Cir. 2004).

*Chevron* deference is appropriate when Congress delegates authority to an agency to resolve gaps or ambiguities in a statutory scheme, and in such cases, a reviewing court must accord deference to the agency's interpretation of the statute according to the two-step analysis laid out by the Supreme Court in *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984).[1] Under *Chevron* analysis, if a reviewing court is presented with unambiguous statutory terms, it must give effect to those terms

---

[1] [W]e ask first whether "the intent of Congress is clear" as to "the precise question at issue." If, by "employing traditional tools of statutory construction," we determine that Congress' intent is clear, "that is the end of the matter." But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." If the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer "the court would have reached if the question initially had arisen in a judicial proceeding." *Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998) (*quoting Chevron*, 467 U.S. at 842, 843 & nn. 9, 11) (citations omitted); *see also Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409–10, 414 (1993); *Sid Peterson Mem. Hosp. v. Thompson*, 274 F.3d 301, 306–07 (5th Cir. 2001).

regardless of the positions taken by the agency or parties litigating against the agency. If the court is presented with ambiguous statutory terms, the court must apply "*Chevron* deference," meaning it must give effect to the agency's interpretation of the statute as long as that interpretation is reasonable, even if a litigant proposes a different interpretation that seems equally appealing or even more appealing. *Chevron* deference applies anytime an agency exercises its delegated authority by promulgating regulations or other means. *See Long Island Care at Home, Ltd. v. Coke*, 127 S.Ct. 2339, 2350 (2007) ("[T]he ultimate question is whether *Congress* would have intended, and expected, courts to treat an agency's rule, regulation, application of a statute, or other agency action as within, or outside, its delegation to the agency of 'gap-filling' authority."); *United States v. Mead Corp.*, 533 U.S. 218, 230-31 (2001) (explaining that *Chevron* deference is usually appropriate when an agency engages in notice-and-comment rulemaking and may also be appropriate outside the context of notice-and-comment rulemaking).

**II.     The Medicaid Act provisions in this case are ambiguous.**

The plain language of 42 U.S.C. § 1396a(bb)(5) is silent as to the rate a state may require contracted Managed Care Organizations ("MCO") to pay Federally-qualified Health Centers, providing only that "[i]n the case of services furnished by a Federally-qualified health center…pursuant to a contract between the center… and a managed care entity…, the State plan shall provide for payment…of a supplemental payment equal to the amount *(if any)*…" 42 U.S.C. § 1396a(bb)(5)(emphasis added). The conforming language found in 42 U.S.C. § 1396(m)(2)(A)(ix) requires managed

4

care organizations to "provide payment *that is not less than* the level and amount of payment which the [managed care organization] would make for the services if the services were furnished by a provider which is not a Federally-qualified health center." *Three Lower Counties v. State of Maryland*, 498 F.3d 294, 305 (4th Cir. 2007) (emphasis in the original). At least one circuit court has recognized the "not *less* than" language "imposes a *floor* on the rates to be paid FQHCs by managed care organizations; it says nothing about a ceiling or precise congruency."[2] *Id*. (emphasis in the original). Put plainly, the statutory language is silent as to the amount a state may require an MCO to pay FQHCs.

This Court previously recognized that "the statutory language in 1396b(m)(2)(A)(ix), which requires MCOs to pay FQHCs 'not less than' the market rate," supported the Fourth Circuit's decision that "[§ 1396a(bb)] did not restrict the states from requiring MCOs to pay *more* than the market rate[.]" ECF No. 66 at p. 19. Despite the Fourth Circuit's opinion, however, this Court went on to rule contrary to the Fourth Circuit, after commenting that the statutory scheme, coupled with CMS guidance, supported a finding that Congress did intend to constrain states' ability to require MCOs to make higher payments. *Id*. at p. 19; *cf. Three Lower Counties v. State of Maryland*, 498 F.3d 294 (4th Cir. 2007). This Court thus implicitly ruled that the statutory language is ambiguous. That is the case because this Court and the Fourth Circuit have reached contrary conclusions about the meaning of the Medicaid Act pertaining to state-contracted MCO payments to FQHCs. *See Comacho v. Texas*

---

[2] HHSC recognizes that extra-circuit precedent is not binding on this Court, but offers it here for its potential persuasive value.

5

*Workforce Com'n.*, 408 F.3d 229, 234 (5th Cir. 2005)(*quoting Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001)) ("Generally, a statute is ambiguous if it is 'capable of being understood in two or more possible senses or ways.'"); *accord City of Arlington, Tex. v. FCC*, 668 F.3d 229, 249 & n. 100 (5th Cir. 2012).

The Court's recognition of ambiguity—in this case, silence—in the Medicaid Act now requires this Court to determine whether CMS's recent approval of SPA 16-02 is entitled to *Chevron* deference. *Hardy Wilson Memorial Hosp. v. Sebelius*, 616 F.3d 449, 455 (5th Cir. 2010) (Explaining that when a statute is silent with respect to a specific issue, a court must determine whether the agency's action is entitled to *Chevron* deference).

### III. The payment methodology adopted by the State of Texas is permitted by the statutory provisions governing FQHC payments and confirmed by CMS approval of SPA 16-02.

HHSC reasonably reads the Medicaid Act provisions relevant to this case as not imposing a ceiling on FQHC payments, leaving an explicit gap in the Medicaid Act concerning how much a state may require a contracted MCO to pay an FQHC. Congress tasked CMS with filling that gap. Plaintiff argues a contrary position that the express language permits only a payment floor on state-contracted MCO payments to FQHCs. *See* ECF No. 94 at p. 8 ("[B]ecause that provision's conforming amendment…states that the only permissible obligation that may be imposed is a floor, it makes clear that a state cannot divest itself of its payment obligation."). Plaintiff's interpretation notwithstanding, the language does not expressly prohibit a state from requiring full, timely payment by MCOs to FQHCs because, as the

6

Fourth Circuit found, it does not impose a ceiling. *Three Lower Counties v. State of Maryland*, 498 F.3d 294, 305 (4th Cir. 2007). The Medicaid Act does, however, contemplate scenarios where no supplemental payment would occur by including "if any" language in § 1396a(bb). HHSC, relying on the "if any" and "not less than" language found in the statute, employs a payment methodology that leaves no delta between the full encounter rate owed to a FQHC and the amount passed through to a contracted MCO by the state to pay FQHCs for each encounter.

CMS's February approval of SPA 16-02 confirms CMS's informal guidance[3] that the Medicaid Act permits HHSC's payment methodology. SPA 16-02 amends current SPA 10-61 to read that "[t]he reimbursement methodologies in section (31)(b) apply equally to the APPS and PPS methodologies"[4] and under (31)(b)(9) the State Plan now provides explicitly that "FQHCs are paid their full per-visit rate by state-contracted managed care organizations when the service is rendered."[5] *See* ECF No. 97-1.

Faced with the parties' competing interpretations of the ambiguous provisions, this Court must apply *Chevron* deference, meaning it must give effect to the agency's interpretation of the statute, even here where Plaintiff proposes an alternative

---

[3] ECF No. 89 at pp. 50-51 (Discussing the various informal communications from CMS to HHSC concerning payment methodology).

[4] This language comes from CMS-approved SPA 10-61 and continues in effect following CMS approval of SPA 16-02. That language may be found here: https://www.hhsc.state.tx.us/medicaid/about/state-plan/docs/basic-state-plan-attachments.pdf

[5] HHSC completed briefing on its Motion for Summary Judgment on January 12, 2016—which included a discussion of documentation showing that CMS approved its MCO contracts, State Plan, and actuarial rate setting documents pertaining to HHSC's FQHC payment methodology for contracted and out-of-network services. ECF No. 89 at pp. 27-29. The various approvals are entitled to deference and support a finding in favor of HHSC in this case as a matter of law. ECF No. 89 at pp. 43-51.

7

interpretation of the Medicaid Act. *See Long Island Care at Home, Ltd. v. Coke*, 127 S.Ct. 2339, 2350 (2007). Further, CMS's interpretation is reasonable, and it confirms HHSC's position on the proper reading of the Medicaid Act. As described above, CMS's interpretation is not expressly prohibited by the language of the statute, and extra-circuit precedent supports CMS's interpretation. *Three Lower Counties v. State of Maryland*, 498 F.3d 294, 305 (4th Cir. 2007).

Even if this Court believes that past CMS guidance supports a contrary finding, ECF No. 66 at p. 19, this Court is not permitted to substitute its interpretation for CMS's. The United States Court of Appeals for the Fifth Circuit has held that if an agency's decision resulted from a sufficiently formal process to warrant deference, then a court's only role is to assess whether the agency's interpretation is "based on a permissible construction of the statute[.]"*Hardy Wilson Memorial Hosp. v. Sebelius*, 616 F.3d at 454-55 (internal citations omitted). CMS's construction is not expressly prohibited by the Medicaid Act, and in fact, is supported by inclusion of "if any" language, suggesting an intent by Congress to permit flexibility in a cooperative state-federal program. Accordingly, CMS's interpretation is a permissible construction of the statute, and CMS's approval of SPA 16-02 is entitled to mandatory deference from this Court.

## IV. State Medicaid Director Letters are entitled to little deference, if any, and are not controlling over express CMS approvals.

The SMDLs in this case represent policy statements, not rules. Plaintiff has not argued, much less shown, that CMS (then-Health Care Financing Administration) implemented the SMDLs relied upon to support their argument

through notice-and-comment rulemaking, or that such policy statements are subject to or excepted from such rulemaking processes. Thus, CMS can change course on these prior SMDLs through SPA approvals, MCO contract approvals, actuarial rate document approvals, and the like, which receive the same or more deference as Plaintiff's SMDLs, depending on the formality of the processes used to obtain the approvals. *See, e.g.*, ECF No. 89 at p. 44 (Identifying the CMS review process for state MCO contracts).

Even if this Court determined that Plaintiff's selected SMDLs constitute rules, at best they constitute interpretive rules that were "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers[.]" *Chrysler Corp. v. Brown*, 441 U.S. 281, n.31 (1979) (quoting the Attorney General's Manual on the Administrative Procedure Act (1947)). To the extent the SMDLs constitute interpretive rules, the SMDLs support the contention that the Medicaid Act sections they address contain explicit or implicit gaps left by Congress for CMS to fill. In this case, Defendant argues, above, that there is a gap in the statute, and CMS stepped in through a formal process, SPA approval, and indicated through its approval that the Medicaid Act does not put a ceiling on the amount a state may require a contracted MCO to pay FQHCs. *See* ECF No. 97-1 ("FQHCs are paid their full per-visit rate by state-contracted managed care organizations when the service is rendered.")

Finally, it is well established that the lack of formality in which the SMDLs were promulgated directly influences the amount of deference to be applied to them.

*See Reno v. Koray*, 515 U.S. 50, 61 (1995) (stating that guidelines not "subject to the rigors of the [APA], including public notice and comment," are entitled only to "some deference"). Plaintiff's selected SMDLs are not entitled to much deference, if any, where Plaintiff failed to show that CMS issued the SMDLs using the notice-and-comment rulemaking procedures of the Administrative Procedure Act (APA), 5 U.S.C.§ 553. Accordingly, even if this Court continues to give the SMDLs relied upon by Plaintiff any level of deference in the face of CMS approval for SPA 16-02, that low-level deference cannot overcome either the statutory language in this case or the mandatory *Chevron* deference applicable to CMS's approval of SPA 16-02, and it cannot overcome deference owed to CMS approval of MCO contracts where Plaintiff failed to identify any SMDL defining services under 42 U.S.C. § 1396b(m)(2)(A)(vii).

## V.     Conclusion

CMS's approval of SPA 16-02 is entitled to deference from this Court.

Dated: March 10, 2016.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Division Chief
General Litigation Division

/s/ Eric A. Hudson
ERIC A. HUDSON
Assistant Attorney General
Texas State Bar No. 24059977
S.D. Texas Admission No. 1000759
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 936-6417
Facsimile: (512) 478-4013
eric.hudson@texasattorneygeneral.gov
*Counsel for Dr. Kyle Janek, In His Official Capacity as Executive Commissioner of the Texas Health and Human Services Commission*

<u>CERTIFICATE OF SERVICE</u>

I certify that on March 10, 2016, a copy of this motion was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the attorneys of record in this case.

>  Michael J. Collins
>  COLLINS, EDMONDS, POGORZELSKI,
>  SCHLATHER & TOWER, PLLC
>  1616 South Voss Road, Suite 125
>  Houston, Texas 77057
>  Telephone: (281) 501-3490
>  Facsimile: (832) 415-2535
>  E-mail: mcollins@cepiplaw.com
>
>  Edward T. Waters
>  Gregory M. Cumming
>  FELDESMAN, TUCKER, LEIFER, FIDELL, LLLP
>  1129 20th Street, N.W. Fourth Floor
>  Washington, D.C. 20036
>  Telephone: (202) 466-8690
>  Facsimile: (202) 293-8103
>  E-mail: ewaters@ftlf.com
>  E-mail: gcumming@ftlf.com

/s/*Eric A. Hudson*_____
ERIC A. HUDSON
Assistant Attorney General