United States District Court
Southern District of Texas
**ENTERED**
September 02, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEGACY COMMUNITY HEALTH SERVICES, INC., | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-25 |
| | § | |
| DR. KYLE L. JANEK, | § § | |
| Defendant. | § | |

**MEMORANDUM & ORDER**

**I.    INTRODUCTION**

This case concerns a challenge to certain aspects of the State's administration of its responsibilities under the federal Medicaid Act, 42 U.S.C. § 1396a *et seq*. ("the Medicaid Act" or "the statute"). Plaintiff Legacy Community Health Services ("Plaintiff"), a community health center serving low-income patients in the Houston area, filed this lawsuit to assert its rights under the Medicaid Act. Defendant Dr. Kyle L. Janek[1] is sued in his official capacity as Executive Commissioner of Texas's Health and Human Services Commission ("HHSC" or "the State"). Legacy claims that HHSC has violated the Medicaid Act with respect to the reimbursement of Legacy for services it provides to Medicaid patients.

In its Memorandum & Order of July 2, 2015 (Doc. No. 66), the Court determined that Plaintiff had stated a claim for relief on two separate theories. First, the Court held that Plaintiff had stated a claim that the State's delegation of its reimbursement responsibility for in-network services to third-party managed care organizations ("MCOs") violates the Medicaid Act. Second,

---

[1] Although Dr. Janek was Executive Commissioner at the time the complaint was filed, Mr. Charles Smith was appointed to the position effective June 1, 2016. As Dr. Janek's successor, Mr. Smith is "automatically substituted as a party." FED. R. CIV. PRO. 25(d).

1

the Court held Plaintiff had stated a claim that the State's process for providing reimbursement for out-of-network services violates the Act. Plaintiff has sought injunctive relief under 42 U.S.C. § 1983 to remedy the alleged shortcomings in Texas's method for providing payments to Legacy for its Medicaid services.

The parties cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. On May 3, 2016, the Court granted summary judgment for Legacy on the issue of whether the State had unlawfully delegated its in-network reimbursement obligation to MCOs, but reserved judgment on Legacy's claim regarding reimbursement for out-of-network services. Mem. & Order, May 3, 2016 [hereinafter May 2016 Opinion] (Doc. No. 119). On May 13, 2016, the Court issued a Notice inviting the Centers for Medicare and Medicaid Services ("CMS") to file a statement of interest on the latter issue. The United States, on behalf of CMS, filed its Statement of Interest (Doc. No. 128) on July 25, 2016 and both parties have filed briefs in response.[2]

The Court now turns to Legacy's claim that the State's policies for providing reimbursement for out-of-network services violate the Medicaid Act. After considering the Statement by CMS, the parties' arguments, and the applicable law, the Court finds that Plaintiff's Motion for Summary Judgment (Doc. No. 84) should be granted as to the claim that the State has failed to provide reimbursement for services rendered to out-of-network patients in conformity with the Medicaid Act. Likewise, the Court finds that Defendant's cross-Motion for Summary Judgment (Doc. No. 89) should be denied as to this claim.

---

[2] In HHSC's response to CMS's Statement of Interest, HHSC asks the Court to reconsider the issues ruled on in the May 2016 Opinion. Def.'s Resp. Stmt. Intrst. 1 n.2 (Doc. No. 130). This request is **DENIED**.

## II.     BACKGROUND

### A.     Federal Statutory Framework

Among the many requirements set forth in the Medicaid Act is one which mandates that states provide payment for Medicaid-covered services rendered by Federally Qualified Health Centers ("FQHCs"), health centers that provide medical care to an under-served population. 42 U.S.C. § 1396d(a)(2)(B)-(C); *id.* § 1396a(bb)(1). Plaintiff is an FQHC. In addition to the Medicaid funds that FQHCs receive from the state, FQHCs are also eligible to receive federal grants under Section 330 of the Public Health Services Act. 42 U.S.C. § 254b. The dual sources of FQHC funding—direct federal grants and indirect federal Medicaid dollars filtered through the states—"allows the FQHC to allocate most of its direct grant dollars towards treating those who lack even Medicare or Medicaid coverage." *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 134 n.2 (2d Cir. 2002). To ensure that Section 330 grants are not used to cover the cost of treating Medicaid patients, the Medicaid Act requires that FQHCs collect reimbursement from the state for services provided to Medicaid beneficiaries. 42 U.S.C. § 254b(k)(3)(F).

The Medicaid Act, specifically § 1396a(bb), also governs precisely *how* a state must reimburse FQHCs for Medicaid services. Since 2001, reimbursement payments have been assessed through what is known as the Prospective Payment System ("PPS"). *Id.* § 1396a(bb)(1)-(3). Stated simply, an FQHC's reimbursement from the state is calculated by multiplying the number of Medicaid patient encounters by the average reasonable costs of serving Medicaid patients in 1999 and 2000, adjusted yearly for inflation. *Id.*; *see generally New Jersey Primary Care Ass'n Inc. v. New Jersey Dep't of Human Servs.*, 722 F.3d 527, 529 (3d Cir. 2013). The

total amount owed by the state to reimburse an FQHC for a Medicaid patient encounter is referred to as the "PPS rate" or "PPS amount."[3]

Texas, like many states, has chosen to implement Medicaid through a managed care system. Tex. Gov. Code § 533.002. Under a managed care approach, the state administers its Medicaid program by contracting with private-sector managed care organizations ("MCOs") that arrange for the delivery of healthcare services to individuals who enroll with them. 42 U.S.C. § 1396u-2(a)(1). In exchange for its services, an MCO receives from the state a prospective per-patient, per-month payment, called a "capitation" payment, based on the number of patients enrolled in the MCO. The MCO, in turn, contracts with healthcare providers, including FQHCs, to provide services to its enrollees. A provider that has a contract with a certain MCO is an "in-network" provider for that MCO, and services it renders to that MCO's enrollees are known as "in-network services." Inversely, when a provider renders services to a patient enrolled in an MCO with which the provider does not have a contract, such services are "out-of-network."

The reimbursement process differs significantly depending on whether the provider's reimbursement claim is for an in-network or out-of-network service. When an FQHC submits a claim for in-network services, the state does not reimburse the FQHC directly; rather, the MCO reimburses the in-network FQHC out of its capitation funds. The Court's May 2016 Opinion focused on the Medicaid Act requirements that govern the in-network FQHC-MCO reimbursement process. As discussed in detail there, the MCO is free to negotiate a rate with the FQHC, so long as the MCO pays the FQHC no less than it would pay to a non-FQHC provider for the same services. If the negotiated rate is lower than the PPS rate, the state must cover the difference by making a supplemental (or "wraparound") payment. *See* 42 U.S.C. §

---

[3] Instead of reimbursing FQHCs on a per-service basis, the statute requires the state to reimburse FQHCs for each visit or "encounter" that they have with a Medicaid patient.

1396a(bb)(5)(A) (describing the state's reimbursement obligation for services provided "pursuant to a contract between" an FQHC and an MCO).

For out-of-network services, in contrast, the absence of any contract between the MCO and the provider means that, as a general matter, the MCO has no reimbursement obligation to the provider. Although the MCO will have no obligation stemming from a contract with the provider, the MCO may have an obligation to out-of-network providers stemming from the MCO's contract with the state. In fact, under § 1396b(m)(2)(A)(vii) of the Medicaid Act, the state-MCO contract *must* address reimbursement for a certain type of out-of-network services: those that "were immediately required due to an unforeseen illness, injury, or condition" (hereinafter, "clause vii services"). 42 U.S.C. § 1396b(m)(2)(A)(vii).[4] This provision requires states to designate, in their contracts with MCOs, that either the MCO or the state will pay the out-of-network provider for clause vii services. *Id.* When the out-of-network provider is an FQHC, § 1396a(bb) requires that the FQHC be reimbursed at the PPS rate. *Id.* § 1396a(bb)(1); *Three Lower Counties Cmty. Health Servs., Inc. v. Maryland*, 498 F.3d 294, 304 (4th Cir. 2007).

### B.   Texas's Regime for Out-of-Network Reimbursement

Texas requires that MCOs reimburse providers for certain out-of-network services. This requirement is set forth in HHSC's contracts with MCOs and in various provisions of the Texas Administrative Code. Pursuant to these contractual and regulatory provisions, MCOs are

---

[4] § 1396b(m)(2)(A)(vii) provides as follows:
> [N]o payment shall be made under this subchapter to a State with respect to expenditures incurred by it for payment for services provided by [an MCO] which is responsible for the provision (directly or through arrangements with providers of services) . . . unless . . . such contract provides that, in the case of medically necessary services which were provided (I) to an individual enrolled with the entity under the contract and entitled to benefits with respect to such services under the State's plan and (II) other than through the organization because the services were immediately required due to an unforeseen illness, injury, or condition, either the entity or the State provides for reimbursement with respect to those services.

required to reimburse out-of-network providers for "*emergency services*." *See* 1 Tex. Admin. Code § 353.4(c)(1) ("An MCO may not refuse to reimburse an out-of-network provider for emergency services."); *id.* § 353.4(c)(2)(B); HHSC-MCO Contract,[5] Section 8.1.3 (Def.'s Appx. 207-08) ("The MCO must provide coverage for Emergency Services to Members 24 hours a day and seven (7) days a week, without regard to prior authorization or the Emergency Service provider's contractual relationship with the MCO."). The term "emergency services" is defined as those services "that are needed to evaluate or [to] stabilize an Emergency Medical Condition." *Id.* at 7 (Def.'s Appx. 32). An "Emergency Medical Condition" is, in turn, defined as:

> [A condition] manifesting itself by acute symptoms and recent onset and sufficient severity . . . such that a prudent layperson . . . could reasonably expect the absence of immediate medical care could result in: (1) placing the patient's health in serious jeopardy; (2) serious impairment to bodily functions; (3) serious dysfunction of any bodily organ or part; (4) serious disfigurement; or (5) in the case of a pregnant woman, serious jeopardy to the health of the woman or her unborn child.

*Id.* If a provider seeing an out-of-network patient has provided a service that does not conform with the above definition of "emergency service," then the MCO is only required to provide reimbursement if the MCO has provided "prior authorization" for its enrollee to seek treatment at the out-of-network provider. *Id.* at Sections 8.1.3 & 8.2.2.1; *see also* Pl.'s Mot. Summ. J. Ex. V, Declaration of Christopher Born[6] ¶ 62 [hereinafter Born Decl.] (Doc. No. 84-23).

### C. Factual Background[7]

Legacy is designated as an FQHC for purposes of Medicaid reimbursement and is also a recipient of Section 330 grants. One of the MCOs that contracts with HHSC to provide care to Texas Medicaid recipients is the Texas Children's Health Plan ("TCHP"). Legacy contracted

---

[5] *See* Def.'s Mot. Summ. J., Attach. 1 to Ex. A (Doc. No. 90-1).
[6] Christopher Born is the President of the Texas Children's Health Plan ("TCHP"), an MCO with which Legacy contracted.
[7] The facts stated here are undisputed.

with TCHP from 2009 to 2015 to provide medical care to Medicaid patients enrolled in TCHP. On February 1, 2015, the effective date of termination of TCHP's contract with Legacy, Legacy became an out-of-network provider for TCHP. Born Decl. ¶ 52. Despite the termination of Legacy's contract with TCHP, patients enrolled in TCHP continued to receive Medicaid-covered services from Legacy, and Legacy continued to submit claims to TCHP for these out-of-network services. *Id.* ¶ 63. Between February 1 and August 9, 2015, TCHP denied approximately 6,000 of Legacy's claims for out-of-network services. Def.'s Mot. Summ. J. Ex. H, Rule 30(b)(6) Deposition of Melisa Garcia,[8] 22:13-22 (Doc. No. 89-9). Approximately 2,700 claims were denied "due to a lack of prior authorization for the out-of-network services," Born Decl. ¶ 66, which, in short, means that TCHP denied the claim because it determined that the claim did not fall within the category of "emergency services" and thus reimbursement was not required.

## III.   LEGAL STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(a). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to show that summary judgment is not appropriate. *Id.* at 325. The nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 (5th Cir. 1994) (en banc) (citing *Celotex*, 477 U.S. at 325). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a

---

[8] Melisa Garcia is the Vice President of Clinical Business Services at Legacy.

scintilla of evidence." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (internal quotation omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## IV. DISCUSSION

The issue of FQHC reimbursement for out-of-network services implicates two different provisions of the Medicaid Act. Section 1396b(m)(2)(A)(vii) governs reimbursement for Medicaid-covered out-of-network services rendered by any provider, whether FQHC or non-FQHC, while § 1396a(bb)(1)-(2) governs reimbursement for any Medicaid-covered service rendered by an FQHC, whether in-network or out-of-network. The Court will address, first, the arguments pertaining to § 1396b(m)(2)(A)(vii) and, second, those pertaining to § 1396a(bb)(1)-(2).

### A. § 1396b(m)(2)(A)(vii)

Plaintiff claims that the language Texas has used to implement § 1396b(m)(2)(A)(vii)'s requirement that out-of-network providers be reimbursed for services "immediately required due to an unforeseen illness, injury, or condition" is inadequate under the plain text of that provision. Plaintiff argues that, by defining the category of out-of-network services for which an MCO must provide reimbursement as "emergency services," the State requires MCO reimbursement for a narrower category than is mandated under § 1396b(m)(2)(A)(vii). This argument rests on the premise that the State's category of "emergency services" captures a smaller universe of claims than does § 1396b(m)(2)(A)(vii)'s category of "immediately required" services. Legacy has offered conclusory assertions that this is so, *see* Pl.'s Mot. Summ. J. 29-30, but no evidence or caselaw to support the alleged discrepancy. Nor has Plaintiff provided any authority for the

proposition that compliance with § 1396b(m)(2)(A)(vii) requires that states reproduce verbatim the text of § 1396b(m)(2)(A)(vii) in the state-MCO contract.

Plaintiff's conclusory argument is not sufficient to prove a violation of § 1396b(m)(2)(A)(vii) because it is not obvious, on the face of the statute, that "immediately required due to an unforeseen illness, injury, or condition" represents a category any wider than "emergency services." The few cases interpreting § 1396b(m)(2)(A)(vii) have referred to clause vii services as "emergency services" and "emergency care." *See Three Lower Counties Cmty. Health Servs., Inc. v. Maryland*, 498 F.3d 294, 304 (4th Cir. 2007); *Cmty. Health Care Ass'n of New York v. Shah*, 770 F.3d 129, 157 (2d Cir. 2014); *Three Lower Counties Cmty. Health Servs., Inc. v. Maryland*, No. CIV.A. WMN-10-2488, 2011 WL 31444, at *19 (D. Md. Jan. 5, 2011), *aff'd*, 490 F. App'x 601 (4th Cir. 2012). Furthermore, both legal and medical dictionaries define "emergency" in terms very similar to those used in § 1396b(m)(2)(A)(vii). *See* BLACK'S LAW DICTIONARY (10th ed. 2014) ("an unforeseen change in circumstances that calls for immediate action to avert, control, or remedy harm"); STEDMAN'S MEDICAL DICTIONARY 582 (27th ed. 2000) ("[a] patient's condition requiring immediate treatment); MERRIAM-WEBSTER'S MEDICAL DESK DICTIONARY 207–08 (1986) ("an unforeseen combination of circumstances or the resulting state that calls for immediate action"). This suggests that the discrepancy between the language Congress used in § 1396b(m)(2)(A)(vii) and the language the State has used to implement the provision may be a distinction without a difference. *See* Pl.'s Mot. Summ. J. Ex. Q, Deposition of Gary Jessee[9] 113:5-10 (Doc. No. 84-18) (stating that the distinction between "immediately required due to unforeseen illness" and "emergency condition" is "semantic[]"). The burden is on Plaintiff to prove otherwise.

---

[9] Gary Jessee is the Deputy Director of the Medicaid/CHIP Division at HHSC.

To show that the State's policies do not comport with § 1396b(m)(2)(A)(vii), Plaintiff needed to present some evidence that the State's implementation of § 1396b(m)(2)(A)(vii) has caused MCOs to deny payment for out-of-network claims that are properly reimbursable under § 1396b(m)(2)(A)(vii). Plaintiff did provide the Court with three out-of-network claims that TCHP denied for failing to qualify as "emergency services." Pl.'s Mot. Summ. J. Ex. Y (Doc. No. 84-26). These claims sought reimbursement for treating patients with "abdominal pain," *id.* at 4, "acut[e] bronchiolitis," *id.* at 7, and "streptococcal sore throat," *id.* at 10. However, Plaintiff has presented no evidence to show that treatment of these conditions qualifies under § 1396b(m)(2)(A)(vii) as services "immediately required due to an unforeseen illness, injury, or condition."

There are any number of ways in which Legacy could have demonstrated that, if Texas had used the language of § 1396b(m)(2)(A)(vii) as opposed to its "emergency services" definition, the MCO would have paid Legacy's out-of-network claims. Plaintiff could have presented fact testimony from a claims administrator at TCHP, or expert testimony from an expert in out-of-network claims administration. Or, Plaintiff could have presented evidence that the type of out-of-network claims that were denied by TCHP are granted by MCOs in one of the states that has implemented § 1396b(m)(2)(A)(vii) using the exact wording of the statute. *See, e.g.*, Md. Code Regs. 10.09.65.20(C)(1) ("[A]n MCO shall reimburse an out-of-network federally qualified health center (FQHC) for services provided to an enrollee that are immediately required due to an unforseen [sic] illness, injury, or condition[.]"). Without any showing of this sort, the Court is not convinced that the State's provisions for out-of-network reimbursement run afoul of § 1396b(m)(2)(A)(vii).

**B.     § 1396a(bb)(1)-(2)**

The fact that Legacy has not demonstrated a violation of § 1396b(m)(2)(A)(vii) does not end the inquiry into whether Texas has satisfied its reimbursement obligations under the Medicaid Act. Because Legacy is an FQHC, the dispositive provision of the Medicaid Act for the issue of out-of-network reimbursement is not § 1396b(m)(2)(A)(vii), but rather § 1396a(bb)(1)-(2).[10] Under § 1396a(bb), "the [s]tate is . . . responsible for reimbursement of the entire PPS rate for *all* Medicaid-eligible encounters."[11] *New Jersey Primary Care Ass'n Inc. v. New Jersey Dep't of Human Servs.*, 722 F.3d 527, 539 (3d Cir. 2013); *see also* May 2016 Opinion 16-17 (collecting other cases so holding). Because the state's reimbursement obligation under § 1396a(bb) extends to "*all* Medicaid-eligible encounters," the state bears the responsibility of ensuring that FQHCs receive PPS reimbursement for both in-network and out-of-network Medicaid-covered services. *See* CMS Stmt. Interest 8, 11. As this Court has previously explained, the state has an "obligation [which] flows directly from 42 U.S.C. § 1396a(bb)" to "ensure that FQHCs are actually reimbursed for [out-of-network] services they provide." Mem. & Order, July 2, 2015, at 14.

When a state delegates to MCOs the task of reimbursing FQHCs for clause vii services—as § 1396b(m)(2)(A)(vii) allows and as Texas has done—the state retains the ultimate responsibility of ensuring that FQHCs receive full PPS reimbursement for all Medicaid-covered

---

[10] In ruling, at the motion to dismiss stage, that Plaintiff had stated a claim to enjoin the State's out-of-network reimbursement policies, the Court made clear that this claim arises under § 1396a(bb), *not* § 1396b(m)(2)(A)(vii). Mem. & Order, July 2, 2015, at 13, 15.

[11] 42 U.S.C. § 1396a(bb) sets forth the state's obligations with respect to "[p]ayment for services provided by Federally-qualified health centers." *See* 42 U.S.C. § 1396a(bb)(1) ("the State plan shall provide for payment for [Medicaid services] furnished by a Federally-qualified health center . . . in accordance with [the PPS methodology]."); *id.* § 1396a(bb)(2) ("[T]he State plan shall provide for payment for . . . 100 percent . . . of the costs . . . which are reasonable and related to the cost of furnishing services."). The provisions of § 1396a(bb) make no distinction between services that an FQHC provides in-network or out-of-network.

11

services. This responsibility creates two distinct payment obligations for the state as relates to out-of-network services provided by FQHCs. First, in the event that an MCO declines to pay or underpays an FQHC for a valid clause vii claim, the state must make payment to the FQHC at the PPS rate for the clause vii service.[12] *Three Lower Counties*, 498 F.3d at 303-304; *Shah*, 770 F.3d at 157; CMS Stmt. Interest 11-12 ("If an FQHC provides covered services that fall within the scope of [§1396b(m)(2)(A)(vii)], and payment is appropriate thereunder, then the FQHC would be entitled to receive payment for such services at the full PPS amount . . . . [, and], as in the case of in-network services, the State cannot divest itself of [the] responsibility for ensuring that the FQHC receives full payment for this amount."). Second, in the event that an FQHC seeks reimbursement for an out-of-network Medicaid-covered service *that does not fall within the scope of §1396b(m)(2)(A)(vii)*, the state must still provide the FQHC with the PPS payment. As CMS has explained:

> Consistent with [§ 1396b(m)(2)(A)(vii)], a state could contractually require an MCO to provide for payment of [clause vii] services at the PPS rate. Even if a state were to do so, however, that delegation would not absolve the state of ultimate responsibility to ensure that an FQHC is actually paid the full PPS amount for *any* covered out-of-network services it provides.

CMS Stmt. Interest 12 (emphasis added). *See also Shah*, 770 F.3d at 157 ("The fact that MCOs are the primary avenue for payment for out-of-network emergency care under [the state's] standard contractual arrangements cannot relieve the state of its specific burden to ensure payment to FQHCs under Section 1396a(bb)(2)."); Mem. & Order, July 2, 2015, at 13 n.4 ("[Section] 1396a(bb) . . . create[s] an enforceable right" that "guarantee[s] that FQHCs will be paid at the PPS rate for services provided to Medicaid patients. . . . § 1396b(m) simply addresses

---

[12] The state could then "bring suit against a non-compliant MCO for breach of contract, unjust enrichment and any other claims as it may see fit." *Cmty. Healthcare Assoc. of New York v. New York State Dep't of Health*, 921 F. Supp. 2d 130, 145 (S.D.N.Y. 2013), *aff'd in part, vacated in part on other grounds sub nom. Cmty. Health Care Ass'n of New York v. Shah*, 770 F.3d 129 (2d Cir. 2014).

12

whether Legacy should turn first to the MCO or to the state for payment."). In short, "[t]o the extent that out-of-network services constitute a part of the services provided by FQHCs, there must be some arrangement by which FQHCs may be reimbursed for them." *Shah*, 770 F.3d at 157.

Under these principles, it is clear that HHSC has not satisfied its obligations under § 1396a(bb). It is undisputed that: (1) Legacy has provided Medicaid-covered services to out-of-network individuals, (2) TCHP has denied payment on claims for such out-of-network services, and (3) Legacy has been left with no payment from the State for the out-of-network services it has provided.[13] Without intervention from the Court, the State will continue to refuse to reimburse Legacy for such services. For the reasons stated above, this is impermissible under § 1396a(bb) and must be enjoined. *See Shah*, 770 F.3d at 153 ("[T]he possibility that FQHCs will 'be left holding the bag,' [is] a clearly impermissible result[.]" (quoting *New Jersey Primary Care*, 722 F.3d at 541)).

The State contends that its approach to out-of-network reimbursement satisfies the Medicaid Act because the State maintains an administrative process by which a provider can challenge an MCO's denial of (or underpayment on) an out-of-network claim. *See* 1 Tex. Admin. Code § 353.4(h). But this administrative review process covers, at most, only the subset of out-of-network services that fall within § 1396b(m)(2)(A)(vii). There remains no procedure by which the State can reimburse FQHCs for Medicaid-covered out-of-network services that do not meet the requirements of § 1396b(m)(2)(A)(vii). The State's failure to provide PPS payment for this segment of out-of-network services must be enjoined.

---

[13] The State disputes whether the out-of-network claims for which Legacy seeks reimbursement qualify as clause vii claims, *see* Def.'s Mot. Summ. J. 25, but the State does not dispute that Legacy has out-of-network claims for covered services that have gone unpaid.

## V.     CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff's Motion for Summary Judgment (Doc. No. 84) should be, and hereby is, **GRANTED IN PART**. Defendant's cross-Motion for Summary Judgment (Doc. No. 89) is **DENIED**. The State's reimbursement policy for out-of-network claims by FQHCs is hereby enjoined until modified in a manner consistent with this Opinion.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 2nd day of September, 2016.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE